```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
    LENI BROWNE and ANDREW BROWNE                    MEMORANDUM & ORDER

                                                     07-CV-2228 (NGG)
                            Plaintiffs,

        -against-

    MARRIOTT INTERNATIONAL HOTELS,
    INC. and TRAMMEL CROW COMPANY,

                            Defendants.
----------------------------------------------------------------X
```
NICHOLAS G. GARAUFIS, United States District Judge.

Leni Browne and Andrew Browne (collectively "Plaintiffs") brought this negligence action against Defendant Marriott International Hotels, Inc. ("Defendant" or "Marriott") and Trammel Crow Co.[1] after Ms. Browne tripped and fell while descending a small, unlit staircase in the sixth-floor outdoor garden area at the Marriott in Springfield, Massachusetts. Currently before the court is Marriott's Motion for summary judgment. (Docket Entry #33.) As explained below, the Motion is DENIED.

I.   **BACKGROUND**

The court considers the following facts undisputed. On October 29, 2005, Plaintiffs were guests at the Marriott Hotel in Springfield, Massachuesetts. (Def. 56.1 (Docket Entry #33) ¶ 1.) Around 7:30 in the evening, Plaintiffs decided to visit an outdoor garden courtyard area located on the sixth floor of the hotel. (Browne Aff. (Docket Entry #35) ¶¶ 4, 6, 8.) The door leading outside was unlocked, as the courtyard area remains open to guests at all times. (Browne Aff. ¶ 9; Foley Dep. (Docket Entry #35) 55; Standrowicz Dep. (Docket Entry #35) 25, 42.)

---
[1] Plaintiff has since settled with Trammel Crow Co., which is no longer a party to this action. (Stipulation Discontinuing Action (Docket Entry #43).)

1

Once outside, Plaintiffs lingered on the deck for several minutes, looking around. (Browne Aff. ¶ 11.) The deck area was dark, with the closest illumination coming from inside the hotel. (Id. ¶ 12.) A small staircase, consisting of three steps, connected the deck to the landscaped courtyard area below. (Id. ¶¶ 14, 16-17.) Off in the distance, between 20 and 30 feet away, Plaintiffs could see lights around the perimeter of the garden, and further away, light from a distant building. (Id. ¶ 12.)

Eventually, Plaintiffs decided to descend the stairs into the garden area. (Id. ¶ 13.) As Plaintiff Leni Browne approached the staircase in the relative darkness, she only perceived two of the three steps, causing her to fall and injure herself:

> As we left the deck, I was looking down and observed two steps. I grabbed onto the handrail and proceeded to slowly walk down the stairs. When I arrived on the second step, I did not see any additional steps below and believed I was then on flat ground. As I took my first step to begin walking forward to the garden, I lost my balance and fell to the ground. As I then discovered, there was a third step that I had not been able to see. By virtue of my fall, I sustained serious personal injuries.

(Id. ¶¶ 15-16.) At the time of the accident, a light fixture mounted on an exterior wall just a few feet away was aimed directly at the stairs, but was not operational. (Id. ¶ 21.)

The testimony of two Marriott employees – Matthew Foley, a loss prevention supervisor and Jeff Standrowicz, a director of engineering – reveals that Marriott paid little or no attention to this light fixture, both before and after Ms. Browne's accident. Although Foley's duties at the time included inspecting the public areas of the hotel for safety issues such as unlit light fixtures, (Foley Dep. 8), he never inspected this light fixture at any time on October 29, 2005 before the accident. (Id. at 42.) Moreover, he did not recall whether he had ever inspected this fixture before the accident. (Id.) Similarly, Standrowicz testified that Marriott did not perform regular inspections of the fixture before the accident. (Standrowicz Dep. 65) In fact, until the accident he was unaware of the existence of the fixture and did not know whether, during his tenure as

2

director of engineering beginning in 2001, any bulbs had ever been replaced in the fixture. (Id. at 12-13.) Although Standrowicz became aware of the fixture after the accident, he does not recall whether he subsequently performed any tests on the fixture or otherwise determined whether the fixture was functioning properly. (Id. at 56-57.) Neither Standrowicz nor Foley knew whether the light fixture has ever been repaired. (Id. at 57-58; Foley Dep. at 52, 58.)

## II. DISCUSSION

### A. Standard of Review

Summary judgment is appropriate where there are no genuine issues of material fact. See Fed. R. Civ. P. 56(c). The burden to show the absence of a genuine factual dispute falls on the moving party. Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970). A dispute regarding a fact is genuine if the evidence is such that a reasonable finder of fact could return a verdict for the nonmoving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A fact is material when it "might affect the outcome of the suit under the governing law." Elec. Inspectors, Inc. v. Vill. of E. Hills, 320 F.3d 110, 117 (2d Cir. 2003). In evaluating a motion for summary judgment, the court is required to "view the evidence in the light most favorable to the party opposing summary judgment, to draw all reasonable inferences in favor of that party, and to eschew credibility assessments . . . ." Weyant v. Okst, 101 F.3d 845, 854 (2d Cir. 1996) (citations omitted).

Summary judgment is properly granted when the non-moving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Abramson v. Pataki, 278 F.3d 93, 101 (2d Cir. 2001) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986)). While a non-moving party must do more than show "some metaphysical doubt as to the material facts," Matsushita Electric Industrial Company, Ltd. v. Zenith Radio Corporation, 475 U.S. 574, 586

(1986), "all that is required [from a non-moving party] is that sufficient evidence supporting the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial," McClellan v. Smith, 439 F.3d 137, 144 (2d Cir. 1996) (citation omitted)). Ultimately, in deciding a motion for summary judgment, the court must determine whether "after resolving all ambiguities and drawing all inferences in favor of the non-moving party, a rational juror could find in favor of that party." Pinto v. Allstate Ins. Co., 221 F.3d 394, 398 (2d Cir. 2000).

### B. Relevant Law

A federal court exercising diversity jurisdiction applies the law of the forum state, including its choice of law rules, to determine the applicable substantive law. See Klaxon Co. v. Stentor Electric Mfg. Co., 313 U.S. 487, 497 (1941). As the parties agree, New York applies the law of the place where the tort occurred with regard to "conduct regulating" rules, such as the duty of care. See Lee v. Bankers Trust Co., 166 F.3d 540, 545 (2d Cir. 1999.) Thus, the court looks to Massachusetts substantive law to determine the appropriate duty of care.

A landowner owes a duty of reasonable care to all persons lawfully on the premises, which includes an "obligation to maintain his property in a reasonably safe condition in view of all the circumstances, including the likelihood of injury to others, the seriousness of the injury, and the burden of avoiding the risk, . . . and to warn visitors of any unreasonable dangers of which the landowner is aware or reasonably should be aware." O'Sullivan v. Shaw, 431 Mass. 201, 204 (2000) (internal quotation marks omitted). The open and obvious doctrine stands as an exception to this duty: "a landowner has no duty to protect lawful visitors on his property from risks that would be obvious to person of average intelligence." Toubiana v. Priestly, 402 Mass. 84, 89 (1988). If the dangerous condition was "so obvious that the defendant would be reasonable in concluding that an ordinarily intelligent plaintiff would perceive and avoid it," then

the landowner is absolved of the duty to warn visitors about the danger. O'Sullivan, 431 Mass. at 206-07. The rationale for the exception is that any warning about a clearly apparent danger would be superfluous and unlikely to decrease the risk of injury. Id. At the same time, the open and obvious rule is not intended to provide landowners a license to neglect unreasonably dangerous conditions on their property. The rule "simply means that there is no duty to warn when a warning would be superfluous because the danger is open and obvious to all; it does not mean that a landowner has no duty to use reasonable care to protect against open and obvious dangers." Martins v. Healy, No. 00-5359, 2002 Mass. Super. LEXIS 254, at *4 (Super. Ct. July 10, 2002).

### C. Marriott's Arguments

Marriott makes several arguments in support of its Motion for summary judgment. First, because "the subject light bulb could well have become inoperable literally minutes before the plaintiffs stepped outside, plaintiffs have utterly failed to demonstrate that the defendant either knew or should have known" of the dangerous condition. (Def. Motion (Docket Entry #33) 9.) Second, because walking down stairs in the dark was an open and obvious danger, Marriott had no duty to warn Plaintiff of the danger. (Reply (Docket Entry #37) ¶¶ 9-20.) Finally, Plaintiffs' conduct amounted to contributory negligence, which would bar her recovery under Massachusetts law. (Def. Motion 9-10.)

Marriott's contention that Plaintiffs cannot prove Marriott's knowledge of the condition because the light bulb might have gone out moments before the accident is untenable. If anything, the record suggests that the fixture had not been functioning properly for quite some time. In essence, Marriott completely ignored routine maintenance of the fixture. Marriott did not regularly inspect it, and their maintenance staff hardly seemed aware of its existence. Indeed, the record does not indicate what was wrong with the fixture because, even after the

5

accident, Standrowicz did not recall performing any tests or reaching any conclusions regarding the problem. Similarly, there is no indication that the fixture has ever been repaired. Under the circumstances, a reasonable jury could conclude that the fixture was inoperable for a sufficient period of time before the accident such that Marriott, in the exercise of reasonable care, should have known of the problem.

Marriott's invocation of the open and obvious doctrine is similarly unavailing. Plaintiffs are not arguing that Marriott had a duty to warn them that walking down a staircase in relative darkness is dangerous. Rather, they argue that Marriott had a duty to maintain the light fixture which would illuminate the stairs, and thus avoid creating an unreasonably dangerous condition. See Martins, 2002 Mass. Super. LEXIS 254, at *1 ("Martins does not contend that the Healys were negligent for failing to warn her of the absence of guardrails; she contends that the Healys were negligent for failing to install guardrails and adequate lighting.")

In light of the undisputed fact that the courtyard area was intended to be enjoyed by guests at all hours, Marriott's complete inattention to the light fixture created a risk that guests visiting the area after dark could injure themselves on the unlit stairs. The court is unwilling to conclude, as a matter of law, that this was not an unreasonably dangerous condition. Whether the inadequate lighting constituted an unreasonably dangerous condition, and whether Plaintiffs were also negligent for proceeding down the stairs despite the darkness[2] "are questions most appropriately left to a jury" – questions which "cannot be resolved as a matter of law by the open and obvious rule." Id. at *6; see also Noble v. Goodyear Tire & Rubber Co., 34 Mass. App. Ct. 397, 402 n.2 (App. Ct. 1993) (noting that summary judgment is seldom granted in negligence

---

[2] The parties disagree as to what body of law applies to Plaintiffs' own negligence. Under the Massachusetts rule, Plaintiffs could not recover at all if they were more than 50% at fault, whereas the New York rule would merely reduce the amount of any award accordingly. As the parties recognize, the New York courts are split as to whether the New York rule applies to out-of-state torts. Because the question of Plaintiffs' own degree of negligence is left to the jury, however, the court need not resolve the parties' dispute at this time.

cases because the "application of the reasonable person standard is uniquely within the competence of the jury"). Accordingly, Marriott has not demonstrated that it is entitled to summary judgment.

## III. CONCLUSION

For the reasons set forth above, Marriott's Motion for summary judgment is DENIED.

SO ORDERED.

                                                                                      s/Nicholas G. Garaufis

Dated: Brooklyn, New York                     NICHOLAS G. GARAUFIS
      September 3, 2010                            United States District Judge